Jenny Kramer
**ALSTON & BIRD**
90 Park Avenue
New York, NY  10016-1387
Telephone: (212) 210-9420
Facsimile: (212) 910-9444
jenny.kramer@alston.com

*Attorney for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN BRITTON, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>POLESTAR AUTOMOTIVE HOLDING UK PLC, THOMAS INGENLATH, JOHAN MALMQVIST, and PER ANSGAR,<br><br>    Defendants. | Case No: 2:25-cv-00840<br><br>**POLESTAR AUTOMOTIVE HOLDING UK PLC, THOMAS INGENLATH, JOHAN MALMQVIST, AND PER ANSGAR'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO CONSOLIDATE** |
| FRANK RODRIGUEZ AND KINA THOMAS, Individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>GORES GUGGENHEIM, INC. N/K/A POLESTAR AUTOMOTIVE HOLDING UK PLC, ALEC E. GORES, ANDREW M. ROSENFIELD, MARK | Case No. 2:25-cv-05403 |

R. STONE, ANDREW MCBRIDE,
RANDALL BORT, ELIZABETH
MARCELLINO, NANCY TELLEM,
THOMAS INGENLATH, JOHAN
MALMQVIST, and PER ANSGAR,

      Defendants.

**POLESTAR AUTOMOTIVE HOLDING UK PLC, THOMAS INGENLATH, JOHAN MALMQVIST, AND PER ANSGAR'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO CONSOLIDATE**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ....................................................................1

II.   BACKGROUND AND PROCEDURAL HISTORY ...................................2

      A.   *Britton* Action..................................................................2

      B.   *Rodriguez* Action..............................................................5

III.  ARGUMENT........................................................................8

      A.   The Motion to Transfer Must Be Decided Before the Motion to
           Consolidate ....................................................................8

      B.   Legal Standard for Motion to Consolidate.............................8

      C.   The Polestar Claims and the GGI Claims Involve Different Law
           and Different Facts ...........................................................9

      D.   Consolidation Would Not Be Efficient and Would Result in
           Prejudice to the Parties and Confusion of the Jury ..........................14

IV.   CONCLUSION.....................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*BRG Harrison Lofts Urb. Renewal, LLC v. Gen. Elec. Co.*,
  No. 216CV06577SRCCLW, 2017 WL 2992733 (D.N.J. July 14, 2017) ..........11

*Daniel T. v. Bd. of Cty. Comm'rs*,
  No. 07-1044 WJ/WPL, 2008 WL 11399520 (D.N.M. Mar. 20, 2008) .............14

*Dashnaw v. Usen*,
  No. 1:05-CV-1592, 2006 WL 1742174 (N.D.N.Y. June 21, 2006) ...........1, 9, 17

*Durigon v. Toronto-Dominion Bank*,
  No. 117CV1665NLHJS, 2017 WL 6388954 (D.N.J. Dec. 13, 2017) .................6

*Hartford Fire Ins. Co. v. Clark*,
  No. 03-3190 ADM/JSM, 2005 WL 2885720 (D. Minn. Oct. 28, 2005) .............9

*Helm v. Slaughter*,
  No. 4:21-CV-705, 2024 WL 3928891 (M.D. Pa. Aug. 23, 2024) ..................9, 11

*In re Cent. European Distribution Corp.*,
  No. 11-6247, 2012 WL 5465799 (D.N.J. Nov. 8, 2012) ...........................passim

*In re Consol. Parlodel Litig.*,
  182 F.R.D. 441 (D.N.J. 1998)...................................................................10, 16

*In re Datatec Sys., Inc. Sec. Litig.*,
  No. 04-CV-525 GEB, 2006 WL 3095951 (D.N.J. Oct. 30, 2006) ..............12, 13

*In re Equity Funding Corp. of Am. Sec. Litig.*,
  416 F. Supp. 161 (C.D. Cal. 1976) ..................................................................12

*In re Pattern Energy Grp. Inc.*,
  No. 20-275 (MN) (JLH), 2023 WL 2655537 (D. Del. Mar. 27, 2023) .............16

*In re TMI Litig.*,
  193 F.3d 613 (3d Cir. 1999) .............................................................................11

*Law Debenture Tr. Co. v. Maverick Tube Corp.*,
  595 F.3d 458 (2d Cir. 2010) ...............................................................................3

ii

*Pope v. Navient Corp.*,
  No. CV 17-8373, 2018 WL 672640 (D.N.J. Feb. 2, 2018) ..................................6

*Sanders v. VeriFone Sys., Inc.*,
  No. 5:13-CV-01038-EJD, 2013 WL 5550435 (N.D. Cal. Oct. 7, 2013)............12

*Sidari v. Orleans Cnty.*,
  174 F.R.D. 275 (W.D.N.Y. 1996) ...............................................................9, 14

*Takata v. Riot Blockchain, Inc.*,
  No. CV182293FLWTJB, 2018 WL 5801379 (D.N.J. Nov. 6, 2018) ..................6

**RULES**

Fed. R. Civ. P. 42(a)................................................................................................8, 9

SEC Rule 424(b)(3) ...................................................................................................7

**STATUTES**

Private Securities Litigation Reform Act, 15 U.S.C. §78u-4(b)..........................4, 15

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) .....passim

Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a).....2, 6, 15

Section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a) ..................passim

Defendants Polestar Automotive Holding UK PLC ("Polestar" or the "Company") and Thomas Ingenlath, Johan Malmqvist, and Per Ansgar ("Polestar Individual Defendants") (collectively, "Polestar Defendants") respectfully submit this Memorandum of Law in Opposition to Co-Lead Plaintiffs Mohamed Soliman and Timothy Bluto's ("Co-Lead Plaintiffs") Motion to Consolidate ("Motion to Consolidate").

## I.  INTRODUCTION

Co-Lead Plaintiffs' Motion to Consolidate seeks to make a single shareholder class action out of claims by shareholders of two separate companies arising out of separate legal theories and separate facts.[1]  Co-Lead Plaintiffs nevertheless assert that consolidation is proper because the lawsuits share one single similar factual allegation.  (Motion to Consolidate at 3.)  That is not enough for Co-Lead Plaintiffs to meet their "burden . . . to not only show the commonality of facts and law, . . . but to convince the court that there would not be any unnecessary delays or confusion" from consolidation.  *Dashnaw v. Usen*, No. 1:05-CV-1592 (GLS/RFT), 2006 WL 1742174, at *2 (N.D.N.Y. June 21, 2006) ("*Dashnaw*").

Polestar Defendants ask this Court to decide the Motion to Transfer as a threshold issue before deciding the Motion to Consolidate.  As set forth in Polestar

---

[1] Polestar Defendants previously moved to transfer one of those actions, captioned *Britton v. Polestar Automotive UK PLC, et al.*, No. 2:25-cv-00840 (D.N.J.) ("*Britton* Action"). [Dkt. 17 ("Motion to Transfer").]

Defendants' opening brief in support of their Motion to Transfer, Co-Lead Plaintiffs agreed to jurisdiction in the United States District Court for the Southern District of New York ("SDNY") when they purchased Polestar shares. Thus, the SDNY should decide whether consolidation is proper.

Even if this Court decides the Motion to Consolidate, however, the Court should deny the Motion to Consolidate, thereby (1) allowing Co-Lead Plaintiffs to continue to prosecute the purported claims under Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 ("Exchange Act") that they were appointed to prosecute against Polestar Defendants, and (2) permitting the new action, *Rodriguez v. Gores Guggenheim, Inc., et al.*, No. 2:25-cv-05403 ("*Rodriguez* Action" or the "*Rodriguez* Complaint"), to proceed independently with its new claims under Sections 14(a) and 20(a) of the Exchange Act against the defendants named only in that action.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    *Britton* Action

On January 30, 2025, Plaintiff John Britton ("Britton") filed a putative securities class action complaint ("*Britton* Complaint") against Polestar Defendants alleging violations of Sections 10(b) and 20(a) of the Exchange Act (allegations therein, the "Polestar Claims").  [Dkt. 1.]  Britton filed the action purportedly on

behalf of a class of holders of Polestar American Depositary Shares ("ADSs")[2] during the period between November 14, 2022 and January 16, 2025. (*Britton* Compl. ¶ 1.)

The *Britton* Complaint alleges that Polestar Defendants made misstatements and omissions concerning the Company's accrued liabilities and assets due to improper accounting practices related to its "unique tooling" and failed to disclose adverse facts about the Company's business and internal controls. (*Id.* at ¶¶ 18, 21–26, 28–31, 33–34 (alleging false statements in the Company's SEC Forms 6-K filed on November 14, 2022 and August 29, 2024, and SEC Forms 20-F filed on April 14, 2023 and August 14, 2024).) The *Britton* Complaint alleges Polestar's ADS price declined when the Company purportedly revealed the "truth" on January 16, 2025, as Polestar announced it was restating its financial results for certain prior quarters (the "Restatement"). (*Id.* at ¶¶ 35–37.) The *Britton* Complaint ignores, however, that the Restatement had "no impact on previously reported revenue,

---

[2] ADSs allow "for a foreign corporation," like Polestar, "to trade on the American stock exchange without listing its ordinary shares on the exchange." *Law Debenture Tr. Co. v. Maverick Tube Corp.*, 595 F.3d 458, 464 (2d Cir. 2010) (citations omitted). To do so, the foreign corporation must issue and deposit ADSs with an American financial institution. *Id.* "The depositary institution then issues American Depositary Receipts or ADRs to the beneficial owners of the ADSs, who are then free to sell the ADSs on American securities exchanges. The listing of ADSs on an American exchange 'makes trading an ADR simpler and more secure for American investors than trading in the underlying security in the foreign market.'" *Id.* (citations omitted).

operating loss, net loss, adjusted EBITDA or net assets" and did not "affect the Company's underlying business operations, cash position, or liquidity." (*Id.* at ¶ 35.) The *Britton* Complaint also ignores that Polestar lowered its earnings guidance for 2024 for reasons having nothing to do with the Restatement, but rather due to "fourth quarter product mix" that "was negatively impacted by fewer than expected Polestar 3 and Polestar 4 sales," and "[o]ther one-time events . . . including a market value adjustment of inventory as well as continuing market pressure from discounting."[3]

On March 31, 2025, pursuant to the process set forth in the Private Securities Litigation Reform Act of 1995 ("PSLRA"),[4] which governs claims brought by civil plaintiffs pursuant to the federal securities laws, five (5) purported Polestar ADS holders filed motions for appointment as lead plaintiff and lead counsel. [Dkts. 9, 10, 11.]

---

[3] Polestar Investors, *Polestar publishes selected results for the third quarter and updates FY 2024 guidance* (Jan. 16, 2025), https://investors.polestar.com/news-releases/news-release-details/polestar-publishes-selected-results-third-quarter-and-updates-fy.

[4] The PSLRA sets forth a statutory procedure for appointment of a "lead plaintiff" to prosecute securities class action claims on behalf of a class of shareholders. 15 U.S.C. § 78u–4. Within sixty (60) days of the publication of a notice advising members of the putative class of the filing of a securities class action complaint, shareholders may "move the court to serve as lead plaintiff of the purported class." *Id.* at (3)(A)(i). Within ninety (90) days thereafter, the court considers such motions and appoints "as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *Id.* at (3)(B)(i).

On May 12, 2025, this Court appointed two Polestar ADS holders, Mohamed Soliman and Timonthy Bluto, as co-lead plaintiffs and The Rosen Law Firm, P.A. and Wolf Haldenstein Adler Freeman and Hertz LLP as co-lead counsel ("Co-Lead Counsel") to "represent the interests of the class." [Dkt. 14.] The Court ordered that "[n]o motion, discovery request, or other pretrial proceedings shall be initiated or filed by any plaintiffs without the approval of Co-Lead Counsel, so as to prevent duplicative pleadings or discovery by plaintiffs." [*Id.* at ¶ 4.]

On May 23, 2025, Polestar Defendants filed the Motion to Transfer and moved to transfer the *Britton* Action to the SDNY pursuant to a mandatory, exclusive forum selection clause Polestar ADS holders agreed to in the Deposit Agreement governing Polestar's ADSs. [Dkt. 17.][5]

## B.    *Rodriguez* Action

Nearly two (2) weeks after the Court's appointment of Co-Lead Plaintiffs and Co-Lead Counsel, and after Polestar Defendants filed the Motion to Transfer, Plaintiffs Frank Rodriguez and Kina Thomas—both purported members of the putative *Britton* class—filed a securities class action complaint asserting four (4) claims. *Rodriguez v. Gores Guggenheim, Inc.*, et al., No. 2:25-cv-05403. [Dkt. 1.]

First, the *Rodriguez* Complaint asserts Exchange Act 10(b) and 20(a) claims against Polestar Defendants based on allegations identical to the Polestar Claims.

---

[5] The Motion to Transfer is not fully briefed.

5

This Court, however, had already appointed Co-Lead Plaintiffs and Co-Lead Counsel to advance those claims. [Dkt. 14.] Thus, the 10(b) and 20(a) claims alleged in the *Rodriguez* Complaint against Polestar Defendants are already part of the *Britton* Action. *See*, *e.g.*, *Takata v. Riot Blockchain, Inc.*, No. CV182293FLWTJB, 2018 WL 5801379, at *2 (D.N.J. Nov. 6, 2018) (consolidating nearly identical claims); *Pope v. Navient Corp.*, No. CV 17-8373 (RBK/AMD), 2018 WL 672640, at *1–2 (D.N.J. Feb. 2, 2018) (same); *Durigon v. Toronto-Dominion Bank*, No. 117CV1665NLHJS, 2017 WL 6388954, at *2–3 (D.N.J. Dec. 13, 2017) (same).

The *Rodriguez* Complaint also asserted two new claims under Sections 14(a) and 20(a) of the Exchange Act on behalf of shareholders of a different company, Gores Guggenheim, Inc. ("GGI"), against seven (7) former GGI officers and directors.[6]  The claims against the GGI officers and directors arose from alleged actions that took place prior to GGI's merger with Polestar when Polestar went public in June 2022 (allegations therein, the "GGI Claims").  These claims are distinct from the claims at issue in the *Britton* Action, as they involve, among other things, different factual allegations, different defendants, a different group of

---

[6] The new defendants are: Alec Gores, Andrew Rosenfield, Mark Stone, Andrew McBride, Randall Bort, Elizabeth Marcellino, and Nancy Tellem. (*Rodriguez* Compl. ¶¶ 92, 105–07.)

shareholders of a different company, and a different relevant time period. (*Rodriguez* Compl. ¶¶ 92, 105–07.) The GGI Claims were filed on behalf of beneficial owners or holders of GGI securities as of the May 18, 2022 record date and were provided the Schedule 14A Proxy Statement filed by GGI on May 25, 2022 ("GGI Proxy") pursuant to SEC Rule 424(b)(3). (*Id.* ¶ 1.)

The GGI Claims also raised a new theory, alleging that the GGI Proxy contained misleading financial projections, thereby causing GGI shareholders to approve the merger with Polestar. (*Id.* ¶¶ 92-93.)[7] The GGI Proxy, filed on May 25, 2022, contained all the misstatements alleged in the GGI Claims.

On June 20, 2025, Co-Lead Plaintiffs filed the Motion to Consolidate requesting consolidation of the *Britton* and *Rodriguez* Actions. [Dkt. 20.] As set forth below, the Court should grant Defendants' Motion to Transfer and let the SDNY decide the Motion to Consolidate or, in the alternative, deny the Motion to Consolidate.

---

[7] The GGI Claims follow similar allegations brought by GGI shareholders in Delaware Chancery Court in 2023. *See May, et al. v. Gores Guggenheim Sponsor LLC, et al.*, No. 2023-0863 (Del. Ch. filed Aug. 22, 2023).

### III.   ARGUMENT

#### A.   The Motion to Transfer Must Be Decided Before the Motion to Consolidate

The Court should decide the Motion to Transfer and transfer this case to the SDNY before deciding the Motion to Consolidate. [*See* Dkt. 17.] Polestar and its shareholders agreed to a mandatory, exclusive forum selection clause requiring "any suit, action or proceeding against or involving the Company . . . arising out of or based upon the ADSs . . . or the transactions contemplated hereby or thereby or by virtue of ownership thereof" to be "instituted in a state or federal court in the City of New York."  [Dkt. 17 at 4-5, citing Kramer Dec. Ex. A, at 45-46, Sec. 7.6.] Thus, any motion involving a case such as this one—based on Polestar shareholders' ownership and transactions in Polestar ADSs—should be decided in the agreed-upon jurisdiction of the SDNY.

#### B.   Legal Standard for Motion to Consolidate

"If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions or issue any other orders to avoid unnecessary cost or delay."  Fed. R. Civ. P. 42(a).  "[C]onsolidation is not mandatory."  *In re Cent. European Distribution Corp.*, No. 11-6247 (JBS-KMW), 2012 WL 5465799, at *7 (D.N.J. Nov. 8, 2012) ("*CEDC*").  "In deciding whether to consolidate actions under Rule 42(a), 'the court must balance the risk of prejudice and possible confusion against the risk of inconsistent adjudications of common factual and legal

8

issues, the burden on the parties and witnesses, the length of time required to conclude multiple lawsuits as against a single one, and the relative expense to all concerned of the single-trial and multiple-trial alternatives.'" *Id.*

"Consolidation is inappropriate . . . if it leads to inefficiency, inconvenience, or unfair prejudice to a party." *Hartford Fire Ins. Co. v. Clark*, No. 03-3190 ADM/JSM, 2005 WL 2885720, at *1 (D. Minn. Oct. 28, 2005). Moreover, "[c]onsolidation is not warranted merely because two separate plaintiffs allege distinct claims under the same general theory of law or statute." *Sidari v. Orleans Cnty.*, 174 F.R.D. 275, 281 (W.D.N.Y. 1996) ("*Sidari*"). "[T]he burden rests with the party moving for consolidation to not only show the commonality of facts and law, . . . but to convince the court that there would not be any unnecessary delays or confusion." *Dashnaw*, 2006 WL 1742174, at *2; *see also Helm v. Slaughter*, No. 4:21-CV-705, 2024 WL 3928891, at *2 (M.D. Pa. Aug. 23, 2024) ("*Helm*") (the moving party bears the burden of demonstrating that "consolidation will reap more benefit than harm").

### C.    The Polestar Claims and the GGI Claims Involve Different Law and Different Facts

Consolidation requires common questions of law or fact. Fed. R. Civ. P. 42(a). "The mere existence of common issues, however, does not require consolidation." *CEDC*, 2012 WL 5465799, at *7. Courts decline to consolidate

where differences in the law or the facts predominate. *See In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998) ("*Parlodel*").

Here, the Polestar Claims and the GGI Claims are distinct, implicate different defendants, concern different securities, relate to different alleged misstatements from different SEC filings, set forth different putative classes, and may proceed in different jurisdictions:

|  | Polestar Claims | GGI Claims |
|---|---|---|
| **Brought Pursuant to Exchange Act Section** | Section 10(b) | Section 14(a) |
| **Defendants Named** | Polestar, Thomas Ingenlath, Johan Malmqvist, and Per Ansgar | Alec E. Gores, Andrew M. Rosenfield, Mark R. Stone, Andrew McBride, Randall Bort, Elizabeth Marcellino, and Nancy Tellem |
| **Securities Purportedly Implicated** | Polestar Class A ADRs | GGI Common Stock |
| **Alleged Speakers of Contested Statements** | Polestar, Thomas Ingenlath, Johan Malmqvist, and Per Ansgar | GGI, Alec E. Gores, Andrew M. Rosenfield, Mark R. Stone, Andrew McBride, Randall Bort, Elizabeth Marcellino, and Nancy Tellem |
| **SEC Filings Challenged** | Polestar Form 6-K filed 11/14/2022<br><br>Polestar Form 20-F filed 4/14/2023<br><br>Polestar Form 20-F filed 8/14/2024 | GGI Proxy filed 5/25/2022 |

10

| | Polestar Claims | GGI Claims |
|---|---|---|
| | Polestar Form 6-K filed 8/29/2024 | |
| **Alleged Corrective Disclosure Dates** | 1/16/2025 | 1/9/2025<br>1/16/2025 |
| **Putative Class** | No earlier than 11/14/2022 | No later than 5/18/2022 |
| **Subject to Mandatory Exclusive Forum Selection Clause for SDNY** | Yes | No |

Co-Lead Plaintiffs cannot meet their burden of showing that consolidating these unique claims "reap[s] more benefit than harm." *See Helm*, 2024 WL 3928891, at *2. The Motion to Consolidate cites no precedent for consolidating such disparate claims with two distinct class periods and two distinct sets of defendants. Every case cited in the Motion to Consolidate involved, *at minimum*, overlapping defendants among the consolidated claims. (Motion to Consolidate at 1-3.) The Motion to Consolidate also does not identify any Third Circuit case consolidating separate Exchange Act claims under Sections 10(b) and 14(a). *See In re TMI Litig.*, 193 F.3d 613, 625 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000) (consolidation of personal injury cases related to the Three Mile Island nuclear power station); *BRG Harrison Lofts Urb. Renewal, LLC v. Gen. Elec. Co.*, No. 216CV06577SRCCLW, 2017 WL 2992733, at *2–4 (D.N.J. July 14, 2017)

11

(consolidation of insurance coverage cases). Indeed, Co-Lead Plaintiffs point to a single 49-year-old, non-binding decision in the Central District of California to support their argument that courts consolidate Sections 10(b) and 14(a) Exchange Act claims. *See In re Equity Funding Corp. of Am. Sec. Litig.,* 416 F. Supp. 161 (C.D. Cal. 1976); *cf. Sanders v. VeriFone Sys., Inc.*, No. 5:13-CV-01038-EJD, 2013 WL 5550435, at *1–2 (N.D. Cal. Oct. 7, 2013) (declining to consolidate cases alleging separate Section 10(b) and 14(a) claims).

Consolidation is not warranted merely because two actions arise under the securities laws or share some factual background. Courts in this District have either deconsolidated or declined to consolidate securities class actions with more overlap than the Polestar Claims and the GGI Claims. In *CEDC*, for example, former Chief Judge Jerome B. Simandle deconsolidated securities class actions that "involve[d] the same Defendants," "the same type of legal claims," and overlapping class periods because, like here, the actions presented distinct factual allegations and legal theories. *See, e.g.*, *CEDC*, 2012 WL 5465799, at *8–12.

Similarly, in *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 GEB, 2006 WL 3095951, at *9 (D.N.J. Oct. 30, 2006) ("*Datatec*"), then-Chief Judge Garrett E. Brown, Jr. declined to consolidate two securities actions when "both cases concern[ed] some of the same defendants, as well as some of the same alleged fraudulent schemes" related to allegedly improper accounting practices. One action

12

involved claims under Section 10(b) of the Exchange Act based on the plaintiffs' purchase of Datatec securities, while the other asserted a broader set of claims arising from representations related to a securities offering. *Id.* The court concluded that, because the cases involved some differing legal claims and factual allegations and separate sets of defendants, consolidation was not warranted. *Id.*

The Polestar Claims asserted under Section 10(b) in the *Britton* Action and the GGI Claims asserted under Section 14(a) in the *Rodriguez* Action are even more distinct than the cases analyzed in *CEDC* and *Datatec*: they involve different claims (Sections 10(b) and 14(a)), different defendants (Polestar and three (3) former executives versus GGI and seven (7) former GGI officers and directors), different securities (Polestar ADSs versus GGI common stock), different class definitions (not after 5/18/2022 versus not earlier than 11/14/2022), and different forum selection analyses (forum selection clause choosing SDNY versus no applicable forum selection clause). *Compare CEDC*, 2012 WL 5465799, at *8–12 and *Datatec*, 2006 WL 3095951, at *9 to (*Britton* Compl. ¶¶ 1–2, 9–12 and *Rodriguez* Compl. ¶¶ 1–2, 12–18, 91–92.) As in *CEDC* and *Datatec*, forcing consolidation would conflate unrelated claims, increase complexity, and prejudice the parties. *See CEDC*, 2012 WL 5465799, at *8–12; *Datatec*, 2006 WL 3095951, at *9.

Co-Lead Plaintiffs' sole argument in favor of consolidation is that the *Britton* and *Rodriguez* Actions "present substantially identical issues relating to the truth

13

revealed in Polestar's Restatement Announcement." (Motion to Consolidate at 3.) The Motion to Consolidate does not, however, explain how the Polestar Claims and the GGI Claims will "present substantially identical issues" when they involve, among other differences, no overlapping alleged misstatements and no similar defendants. In any event, "even if some evidence may be relevant in both cases, that alone, does not warrant consolidation of the two actions." *Sidari*, 174 F.R.D. at 282; *see also CEDC*, 2012 WL 5465799, at *12 (deconsolidating actions despite "some overlap" between witnesses and documents during discovery). Differences between the Polestar and GGI Claims overshadow any minor commonalities, and consolidation of the Polestar Claims and GGI Claims is, therefore, unwarranted.

**D.  Consolidation Would Not Be Efficient and Would Result in Prejudice to the Parties and Confusion of the Jury**

In exercising its discretion to consolidate cases, a court should weigh "the interests of judicial economy against the potential for new delays, expense, confusion, or prejudice." *See CEDC*, 2012 WL 5465799, at *9. Where, as here, the "saving on judicial resources is low, while the possibility of jury confusion and prejudice . . . is high," consolidation is not appropriate. *See Daniel T. v. Bd. of Cty. Comm'rs*, No. 07-1044 WJ/WPL, 2008 WL 11399520, at *2 (D.N.M. Mar. 20, 2008).

14

***Efficiency.***  Consolidation will not save judicial or party resources.  Because the Polestar Claims and GGI Claims raise distinct factual and legal issues, Polestar Defendants and GGI Defendants will likely file separate motions to dismiss and, if necessary, separate motions for summary judgment. Nor will consolidation streamline discovery (if any) or any discovery-related motion practice.  For example, discovery may require the GGI Defendants to provide documents and testimony related to the preparation of the GGI Proxy—an issue irrelevant to the Polestar Claims.  Likewise, Polestar Defendants may seek discovery related to Co-Lead Plaintiffs' Polestar ADS purchases, which has nothing to do with the GGI Claims. The relevant time periods for the GGI Claims (May 2022) and the Polestar Claims (November 2022 through August 2024) also diverge.  Likewise, the complete lack of overlap between defendants will result in discovery necessary in one case, but not the other.

Co-Lead Plaintiffs cannot use the overlapping Exchange Act Section 10(b) and 20(a) claims against Polestar Defendants in the *Britton* and *Rodriguez* Actions as a Trojan Horse to force consolidation of the unrelated GGI Claims.  As described above, those claims are already part of the *Britton* Action.  (*Supra* at 1-2.)  It is improper under the PSLRA and the Court's May 12, 2025 Order for the *Rodriguez* Complaint to assert those claims.

15

*Confusion.*  Should this case reach trial, consolidation risks confusing the jury because the Polestar Claims and the GGI Claims require proof of different elements using different types of evidence.  For instance, the Polestar Claims under Section 10(b) require proof of intent to defraud, while the GGI Claims under Section 14(a) require proof of negligence.  *Compare* 15 U.S.C. § 78j(b) *with* 15 U.S.C. § 78n(a). The damages models for the Polestar Claims under Section 10(b) and the GGI Claims under Section 14(a) also differ: damages under Section 10(b) are based on "on losses sustained as the result of a company's materially false public statements," whereas Section 14(a) damages are based on proof that "a specific corporate transaction requiring shareholder authorization . . . was the direct cause of the pecuniary injury for which recovery is sought." *In re Pattern Energy Grp. Inc.*, No. 20-275 (MN) (JLH), 2023 WL 2655537, at *3 (D. Del. Mar. 27, 2023).  Thus, a consolidated trial is likely to require jurors to "assimilate vast amounts of information" about the distinct Polestar Claims and GGI Claims.  *See Parlodel*, 182 F.R.D. at 447.  This Court should not allow "the dangers of a streamlined trial process . . . [and] the systemic urge to aggregate litigation . . . to trump" each party's right to justice.  *Id*.

*Prejudice.* Consolidation also risks severe prejudice to the putative class for the GGI Claims. The Motion to Consolidate cites zero evidence of Co-Lead Plaintiffs' standing to bring the GGI Claims.  Indeed, the Motion to Consolidate does

16

not address standing outside of a single sentence footnote asserting Co-Lead Plaintiffs are "empowered" to bring the 14(a) claims.  (Motion to Consolidate at 3, n.3.)  Consolidation may, therefore, leave the GGI Claims without an adequate representative with standing to prosecute those claims.  *See CEDC*, 2012 WL 5465799, at *10.

Accordingly, Co-Lead Plaintiffs have not met their burden "to convince the court that there would not be any unnecessary delays or confusion." *Dashnaw*, 2006 WL 1742174, at *2.

## IV.   CONCLUSION

For each of these reasons, the Court should either decline to decide the Motion to Consolidate or, in the alternative, deny the Motion to Consolidate.

Dated: July 7, 2025                         Respectfully submitted,

*/s/ Jenny Kramer*
Jenny Kramer
**ALSTON & BIRD**
90 Park Avenue
New York, NY  10016-1387
Telephone: (212) 210-9420
Facsimile: (212) 210-9444
jenny.kramer@alston.com

*Attorney for Defendants*

17

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this 7th of July, 2025, I served a copy of the foregoing

document through the CM/ECF system upon all counsel of record.

*/s/ Jenny Kramer*
Jenny Kramer