Jenny Kramer
**ALSTON & BIRD**
90 Park Avenue
New York, NY 10016-1387
Telephone: (212) 210-9420
Facsimile: (212) 910-9444
jenny.kramer@alston.com

*Attorney for Defendants*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN BRITTON, Individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>POLESTAR AUTOMOTIVE HOLDING UK PLC, THOMAS INGENLATH, JOHAN MALMQVIST, and PER ANSGAR,<br><br>   Defendants. | Case No: 2:25-cv-00840<br><br>**REPLY IN SUPPORT OF MOTION TO TRANSFER TO THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK** |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................1

II. THE FORUM SELECTION CLAUSE IN THE DEPOSIT AGREEMENT GOVERNS THE ADS CLAIMS............................................3

III. POLESTAR'S ARTICLES OF ASSOCIATION AND FORMS 20-F SUPPORT TRANSFER TO THE SDNY ........................................................7

IV. EXCEPTIONAL CIRCUMSTANCES DO NOT OUTWEIGH TRANSFER ..................................................................................................13

V. CONCLUSION..........................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
   No. LA CV19-01619 JAK (JCx), 2019 U.S. Dist. LEXIS 234800 (C.D.
   Cal. Oct. 24, 2019) ..................................................................................... 3, 4, 5

*Atl. Marine Constr. Co. v. United States Dist. Court*,
   571 U.S. 49 (2013) .............................................................................................. 13

*Battaglia v. Ope Inmar Inv. Holdings, LLC*,
   No. 1:24-cv-3500-SEG-CMS, 2025 U.S. Dist. LEXIS 78182 (N.D. Ga.
   Apr. 24, 2025) ....................................................................................................... 5

*Beal Sav. Bank v. Sommer*,
   865 N.E.2d 1210 (N.Y. 2007) .............................................................................. 9

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975) ............................................................................................. 7

*City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp.
PLC*,
   No. 2:19-cv-15382-BRM-JAD, 2020 U.S. Dist. LEXIS 223563 (D.N.J.
   Nov. 30, 2020) .................................................................................................. 4, 5

*Deutschman v. Beneficial Corp.*,
   841 F.2d 502 (3d Cir. 1988) ................................................................................ 7

*DML Bakeries, Inc. v. Choice Prods. USA, LLC*,
   No. 2:19-cv-02698-HLT, 2020 U.S. Dist. LEXIS 247716 (D. Kan. Mar.
   13, 2020) ............................................................................................................... 5

*Harland Clarke Holdings Corp. v. Milken*,
   997 F. Supp. 2d 561 (W.D. Tex. 2014) ........................................................... 2, 5

*In re Howmedica Osteonics Corp.*,
   867 F.3d 390 (3d Cir. 2017) .............................................................................. 13

*Jenkins v. iQIYI, Inc.*,
   No. 20-cv-02882-PJH, 2020 U.S. Dist. LEXIS 118147 (N.D. Cal. July 6,
   2020) ..................................................................................................................... 4

*Kerns v. Logicworks Sys. Corp.*,
 No. 2:12-cv-4146 (WHW), 2012 U.S. Dist. LEXIS 194622 (D.N.J. Oct. 10, 2012) ................................................................................................................8

*Krist v. Pearson Education, Inc.*,
 263 F. Supp. 3d 509 (E.D. Pa. 2017) ......................................................................6

*Law Debenture Tr. Co. v. Maverick Tube Corp.*,
 595 F.3d 458 (2d Cir. 2010) ...................................................................................6

*Major Energy Servs. LLC v. Orange & Rockland Utils., Inc.*,
 2020 N.Y. Misc. LEXIS 2592 (N.Y. Sup. Ct. June 8, 2020) ..................................9

*Quarum v. Mitchell Int'l, Inc.*,
 No. 3:18-cv-02159-SB, 2019 U.S. Dist. LEXIS 74294 (D. Or. Apr. 12, 2019) ......................................................................................................................6

**STATUTES**

Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b) ........................3, 4, 7

Section 20(a) of the Exchange Act of 1934, 15 U.S.C. § 78t(a) ............................3, 4

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b) .................7

Defendants[1] respectfully submit this Reply in Support of their Motion to Transfer to the U.S. District Court for the Southern District of New York (the "Reply").

## I. INTRODUCTION

As described in the Motion, the Deposit Agreement contains a mandatory, exclusive forum selection clause designating the SDNY as the proper forum for actions like this securities fraud class action "arising out of" the ADSs, the Deposit Agreement, or transactions contemplated by the Deposit Agreement. (Motion at 1-6.) Supreme Court precedent, therefore, requires this Court to transfer the ADS Claims to the SDNY, as they arise out of Plaintiffs' purchases of Polestar ADSs and allege harm based on the value of those securities. (*Id.* at 3-6.)

Plaintiffs argue the forum selection clause in the Deposit Agreement does not apply to the ADS Claims, and that extrinsic sources demonstrate forum for the ADS Claims may lie in any federal district court. [*See generally* Dkt. 21, Co-Lead Plaintiffs' Opposition to Defendants' Motion to Transfer ("Opposition" or "Opp.") at 1-3.] Plaintiffs' argument fails for three reasons.

---

[1] Capitalized terms have the same meaning ascribed in Defendants' Opening Brief in Support of the Motion to Transfer (the "Motion") unless otherwise defined herein. [Dkt. 17-1.]

1

*First*, courts, including in this District, consistently interpret nearly identical forum selection language to cover Exchange Act claims in securities fraud class actions and mandate their transfer. Plaintiffs cite no authority suggesting otherwise.

*Second*, the "extremely broad" language in the forum selection clause in the Deposit Agreement unambiguously applies to the ADS Claims.[2] *See Harland Clarke Holdings Corp. v. Milken*, 997 F. Supp. 2d 561, 574 (W.D. Tex. 2014) ("*Milken*"). Plaintiffs offer no reason—or legal support—for the assertion the forum selection clause in the Deposit Agreement must name every statute to which it applies.

*Third*, absent ambiguity in the language of the forum selection clause in the Deposit Agreement, the Court should not consider extrinsic sources, such as Polestar's Articles of Association ("Articles") and 2023 and 2024 SEC Forms 20-F ("Forms 20-F"). But even if it does, those sources also support transfer to the SDNY.

For the reasons set forth in the Motion and in this Reply, the Court should transfer this case to the SDNY.

---

[2] Plaintiffs argue both that the forum selection clause in the Deposit Agreement *per se* does not apply to the ADS Claims and that the forum selection clause is ambiguous as to whether it applies to the ADS Claims. (Opposition at 2, 7.) Both cannot be true—the forum selection clause either governs the ADS Claims or it does not. It does, for the reasons set forth below. (Reply at 3-7.)

## II. THE FORUM SELECTION CLAUSE IN THE DEPOSIT AGREEMENT GOVERNS THE ADS CLAIMS

As Defendants explained in the Motion, the plain language of the binding, exclusive forum selection clause in the Deposit Agreement governing actions involving Polestar "***arising out of or based upon the Deposit Agreement, ADSs . . . or the transactions contemplated hereby or thereby or by virtue of ownership thereof***" mandates transfer of the ADS Claims to the SDNY. (Motion at 3-6.)

The Opposition asserts that the language of the forum selection clause does not cover the ADS Claims because it "makes no specific reference to claims brought pursuant to the federal securities laws," without any legal or logical explanation why a forum selection clause would list each covered statutory claim. (Opp. at 7.)

To the contrary, courts consistently transfer Exchange Act claims in securities fraud class actions based on nearly identical forum selection clauses and well-established rules of contract interpretation.

***Established Precedent.*** Courts uniformly interpret nearly identical forum selection language governing claims "arising out of" ADSs or ADRs to cover Exchange Act claims in securities fraud class actions and mandate their transfer.

For example, in *Qihoo,* the court held that securities fraud class action claims brought by former ADR holders under Sections 10(b) and 20(a) of the Exchange Act "ar[o]se out of" the ADRs because the claims were "based on allegations that false and misleading [] statements depressed the prices of ADRs traded on the NYSE."

3

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, No. LA CV19-01619 JAK (JCx), 2019 U.S. Dist. LEXIS 234800, at *17, *22 (C.D. Cal. Oct. 24, 2019) *("Qihoo")* (transferring Exchange Act claims).

Likewise, in *iQIYI*, the court held that Exchange Act claims "plainly ar[o]se[] out of the . . . issued iQIYI ADSs" because "plaintiff allege[d] that defendants misled him and other putative class members into purchasing [] ADSs by" making false statements and sought "to recover damages based on 'the precipitous decline in the market value of [defendant's] securities.'" *Jenkins v. iQIYI, Inc.,* No. 20-cv-02882-PJH, 2020 U.S. Dist. LEXIS 118147, at *9–10 (N.D. Cal. July 6, 2020) ("*iQIYI*") (transferring Exchange Act claims).

In this Court, Judge Martinotti held that a nearly identical forum selection clause covering "any legal suit, action or proceeding against or involving the Company . . . arising out of or based upon this Deposit Agreement or the transactions contemplated hereby" encompassed the plaintiffs' Sections 10(b) and 20(a) claims. *City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*, No. 2:19-cv-15382-BRM-JAD, 2020 U.S. Dist. LEXIS 223563, at *11–13 (D.N.J. Nov. 30, 2020) ("*Reckitt*") (transferring Exchange Act claims to the SDNY); *City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*, No. 2:19-cv-15382-BRM-JAD, at 8 (D.N.J.) [Dkt. 43-1] ("*Reckitt* Brief in Support of Motion to Transfer") (quoting forum selection clause).

The Opposition cites no authority to the contrary. Instead, the Opposition mangles *Reckitt*, claiming to distinguish it on the basis that, like here, the forum selection clause at issue did not reference Exchange Act claims. (Opp. at 9 n.6.) But despite that, this Court in *Reckitt* enforced a materially identical clause in a deposit agreement—one that, like here, applied broadly to claims "arising out of or based upon" the ADSs—and did not conclude the clause excluded Exchange Act claims. 2020 U.S. Dist. LEXIS 223563, at *11–13; *Reckitt* Brief in Support of Motion to Transfer at 8 (quoting forum selection clause). Accordingly, the weight of the precedent favors transfer.

**Contract Principles.** In addition, long-standing contract interpretation principles also make clear that "[t]he language in [] forum-selection clauses — including claims 'arising out of or related to' the agreements and the transactions contemplated thereby — is extremely broad." *Milken*, 997 F. Supp. 2d at 574 (internal citation omitted); *see also Qihoo*, 2019 U.S. Dist. LEXIS 234800, at *17 ("The language 'arising out of'... is broad and shows that the forum-selection clause applies" to Exchange Act claims) (internal citation omitted); *see also Battaglia v. Ope Inmar Inv. Holdings, LLC*, No. 1:24-cv-3500-SEG-CMS, 2025 U.S. Dist. LEXIS 78182, at *24–25 (N.D. Ga. Apr. 24, 2025) (construing broadly forum selection clause covering "transactions contemplated" by an agreement); *DML Bakeries, Inc. v. Choice Prods. USA, LLC*, No. 2:19-cv-02698-HLT, 2020 U.S. Dist.

5

LEXIS 247716, at *9 (D. Kan. Mar. 13, 2020) (same); *Quarum v. Mitchell Int'l, Inc.*, No. 3:18-cv-02159-SB, 2019 U.S. Dist. LEXIS 74294, at *8–9 (D. Or. Apr. 12, 2019) (same). Thus, forum selection clauses that include such "extremely broad" language—like the one at issue here—apply to statutory claims including those under the federal securities laws and need not name the Exchange Act explicitly.

The Opposition's proffered interpretation of the forum selection clause in the Deposit Agreement to exclude Exchange Act claims such as the ADS Claims would "strain the contract language beyond its reasonable and ordinary meaning." *See Law Debenture Tr. Co. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010). Plaintiffs fail to identify any case supporting their interpretation. The Opposition cites a single, inapposite Eastern District of Pennsylvania case that involved an attempt to enforce a forum selection clause against a *non-party* to an agreement. (Opp. at 7 (citing *Krist v. Pearson Education*, Inc., 263 F. Supp. 3d 509 (E.D. Pa. 2017) ("*Krist*")).) This Court can disregard *Krist* because Plaintiffs do not dispute that they are parties to the Deposit Agreement, and thus, *Krist* does not apply.

***Application to ADS Claims.*** Accordingly, the forum selection clause in the Deposit Agreement is unambiguous and covers the ADS Claims for at least three reasons. First, the ADS Claims "arise out of" the Polestar ADSs and the Deposit Agreement because the Complaint alleges Plaintiffs purchased Polestar ADSs at artificially inflated prices during the class period and suffered losses when the price

6

of Polestar's ADSs declined. (Compl. ¶ 36 (alleging price of Polestar ADSs fell on announcement of accounting restatement); *id.* at ¶ 53 (alleging misstatements artificially inflated price of Polestar ADSs during class period).) Second, the ADS Claims arise out of the "transactions contemplated" by the Deposit Agreement because the Complaint defines the class as "persons or entities who purchased or otherwise acquired" Polestar ADSs—*i.e.*, engaged in the "transactions contemplated" by the Deposit Agreement. (*Compare* Kramer Dec. Ex. A, at 7, Sec. 2.1, 45-46, Sec. 7.6 *with* Compl. at ¶ 1.) Third, the ADS Claims arise "by virtue of [Plaintiffs'] ownership" of Polestar ADSs because standing to bring a claim under Section 10(b) is limited to purchasers or sellers of securities. *See Deutschman v. Beneficial Corp.*, 841 F.2d 502, 505–06 (3d Cir. 1988) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)); (Kramer Dec. Ex. A, at 45-46, Sec. 7.6.)[3]

This Court should therefore transfer this case to the SDNY.

### III.  POLESTAR'S ARTICLES OF ASSOCIATION AND FORMS 20-F SUPPORT TRANSFER TO THE SDNY

As described in the Motion, the plain language of the forum selection clause in the Deposit Agreement requires transfer of the ADS Claims to the SDNY. (Motion

---

[3] [*See also* Dkts. 9-5, 11-4 (Plaintiffs' sworn Certifications pursuant to the Private Securities Litigation Reform Act of 1995 in support of their respective applications for Lead Plaintiff appointment, setting forth, *inter alia*, their transactions in Polestar securities).]

at 3-6.) In an effort to evade transfer, the Opposition argues that the forum selection clause in the Deposit Agreement is ambiguous and that the Court should therefore look to the extrinsic sources of Polestar's Articles and Forms 20-F to conclude that Plaintiffs may file the ADS Claims in any federal court. (Opp. at 7-10.) This argument fails because the forum selection clause in the Deposit Agreement is unambiguous, and even if the Court considers extrinsic sources, both the Articles and Forms 20-F support transfer.

First, as described above, the Opposition cannot identify ambiguity in the Deposit Agreement. (Reply at 6-7.) Without evidence of ambiguity, the Court should not consider extrinsic sources, and the analysis can end here. *Kerns v. Logicworks Sys. Corp.*, No. 2:12-cv-4146 (WHW), 2012 U.S. Dist. LEXIS 194622, at *5–7 (D.N.J. Oct. 10, 2012) (holding under New York law that "[e]xtrinsic evidence may only be considered if the document itself is ambiguous").

But even if the Court considers Polestar's Articles and Forms 20-F, both support transfer to the SDNY.

*Articles.* The Opposition argues that the Articles state "the federal district courts of the United States of America shall be the sole and exclusive forum for the resolution of any complaint asserting a cause of action arising . . . the Exchange Act" but ignores that the immediately preceding clause permits Polestar to "***consent[] in writing to the selection of an alternative forum.***" (Opp. at 7-9; Rosen Decl. Ex. A,

8

Articles § 143.2 (emphasis added).)[4] Here, Polestar consented in writing in the Deposit Agreement to exclusive jurisdiction in state or federal courts in New York City for suits, such as this one, "arising out of or based upon the Deposit Agreement, ADSs . . . or the transactions contemplated hereby or thereby or by virtue of ownership thereof." (Kramer Dec. Ex. A, at 45-46, Sec. 7.6.) Plaintiffs cannot cherry-pick parts of the Articles they like and ignore the rest. *See Beal Sav. Bank v. Sommer*, 865 N.E.2d 1210, 1211, 1213–14 (N.Y. 2007).

Regardless, the Court can give force to the forum selection provisions in the Deposit Agreement and the Articles: the Articles designate federal courts generally as the forum for Exchange Act claims, while the Deposit Agreement designates the SDNY as the specific federal court in which to file. By transferring the case to the SDNY, these provisions can "be harmonized . . . so as not to leave any provision without force and effect." *Major Energy Servs. LLC v. Orange & Rockland Utils., Inc.*, 2020 N.Y. Misc. LEXIS 2592, at *17–21 (N.Y. Sup. Ct. June 8, 2020).

***Forms 20-F.*** The Opposition next argues that a risk factor in Polestar's Forms 20-F summarizing various forum selection provisions that apply to Polestar and

---

[4] For clarity, the relevant portion of the Articles reads: "Unless the Company consents in writing to the selection of an alternative forum, the federal district courts of the United States of America shall be the sole and exclusive forum for the resolution of any complaint asserting a cause of action arising under the Securities Act or the Exchange Act." (Rosen Decl. Ex. A, Articles § 143.2.)

9

setting forth a summary of the types of claims for which forum lies in England and Wales versus the United States demonstrates that Plaintiffs may file the ADS Claims in any federal court. (Opp. at 7-9.) The subject risk factor referenced in the Opposition reads in full:

> <u>The Polestar Articles provide that unless Polestar consents in writing to the selection of an alternative forum, the courts of England and Wales will, to the fullest extent permitted by law,</u> be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of Polestar; (ii) any action, including any action commenced by a member of Polestar in its own name or on behalf of Polestar, asserting a claim of breach of any fiduciary or other duty owed by any director, officer or other employee of Polestar (including but not limited to duties arising under the Companies Act); (iii) any action arising out of or in connection with the Polestar Articles or otherwise in any way relating to the constitution or conduct of Polestar; or (iv) any action asserting a claim against Polestar governed by the internal affairs doctrine (as such concept is recognized under the laws of the United States of America). ***The Deposit Agreements also provide for exclusive forum in state and federal courts in the City of New York.*** <u>This forum selection provision in the Polestar Articles will not apply to actions or suits brought to enforce any liability or duty created by the Securities Act, Exchange Act or any claim for which the federal district courts of the United States of America are, as a matter of the laws of the United States of America, the sole and exclusive forum for determination of such a claim.</u> The Polestar Articles provide that the federal district courts in the United States will be the exclusive forum for claims against Polestar under the Securities Act and the Exchange Act.[5]

(Kramer Dec. Ex. B at 50; Kramer Dec. Ex. C at 6 (emphasis added).)

---

[5] The Opposition reproduces, without explanation, a risk factor from a Schedule 14A Proxy Statement filed by Gores Guggenheim, Inc., a non-Polestar company. (*Id.* at 8 n.4.) Representations by other companies in their SEC filings do not bind Polestar and are irrelevant to this analysis.

10

Yet here again the Forms 20-F point to the forum selection clause in the Deposit Agreement that designates the SDNY as the forum for claims arising from the ADSs. (Kramer Dec. Ex. B. at 50; Kramer Dec. Ex. C at 6 ("[t]he Deposit Agreements . . . provide for exclusive forum in the state and federal courts of New York City.").) Moreover, Polestar's Forms 20-F attach copies of the Deposit Agreement and the Articles that contain the referenced provisions' full text. (Kramer Dec. Ex. B. at 128 (listing Articles as the first exhibit to the 20-F and the Deposit Agreement as the second); Kramer Dec. Ex. C at 94 (same).)[6] Plaintiffs cannot rely on a summary risk factor to override the plain language of a contract between the parties. Thus, even if the Court considers this extrinsic evidence, Polestar's Forms 20-F confirm the Court should transfer this case to the SDNY.

The Opposition asserts in a footnote that "the cited language in the Forms 20-F constitutes Polestar's consent in writing to filing in any federal district court in the United States of America." (Opp. at 9 n.5.) The Opposition provides no legal basis for this assertion, and thus, the Court should disregard it. Plaintiffs further attempt to discredit the forum selection clause by asserting that Defendants' reliance on the

---

[6] The detailed description of Polestar's ADSs, attached to the Forms 20-F, also refers to the Deposit Agreement as the governing source of ADS holders' rights, stating that "the rights and obligations of an owner of ADSs will be determined by reference to the terms of the applicable deposit agreement and not by this summary," and emphasizing that "summaries by their nature lack the precision of the information summarized." (Kramer Dec. Ex. B. at 14; Kramer Dec. Ex. C. at 217.)

11

Deposit Agreement contradicts Polestar's public statements and renders the Forms 20-F misleading. (*Id.* at 10 n.7.) As described *supra* at 10-11, however, the Forms 20-F summarize and do not contradict the Deposit Agreement.

Finally, Plaintiffs ignore (and fail to reproduce in the Opposition) most of the risk factor on which the Opposition relied for its strained interpretation. The Opposition whittles the entire risk factor down to focus on the sentence: "[t]his forum selection provision in the *Polestar Articles* will not apply to actions or suits brought to enforce" Exchange Act claims. (*Compare id.* at 5-6 *with* Kramer Dec. Ex. B. at 50; Kramer Dec. Ex. C at 6 (emphasis added).) But that sentence has nothing to do with the description of the forum selection clause in the Deposit Agreement. Rather, it refers to the risk factor's first sentence summarizing a provision of the *Polestar Articles* setting forth claims that must be filed in England and Wales. (Kramer Dec. Ex. B. at 50; Kramer Dec. Ex. C at 6 (emphasis added).)[7] It is irrelevant.

Accordingly, nothing in either the Articles or Forms 20-F prevents proper transfer of the lawsuit to the SDNY.

---

[7] The Opposition cites, without elaboration, a provision of the Articles that addresses which lawsuits plaintiffs must file in England and Wales versus federal court in the United States. (Opp. at 9; Rosen Decl. Ex. A, Articles § 143.3.) For the same reasons set forth herein, that provision does not bear on this transfer analysis.

12

## IV. EXCEPTIONAL CIRCUMSTANCES DO NOT OUTWEIGH TRANSFER

As described in the Motion, under *Atlantic Marine*, courts should transfer claims subject to a valid forum selection clause "in all but the most exceptional cases." *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 63 (2013) ("*Atlantic Marine*"). The Opposition sets forth no such exceptional circumstances at issue here. Instead, the Opposition argues that the Court should engage in a two-step analysis for cases not subject to *Atlantic Marine*. (Opp. at 10-13.) Because *Atlantic Marine* applies, however, no reason exists to undertake this separate analysis. *See In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017).

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion and transfer this case to the SDNY.

Dated: July 21, 2025

Respectfully submitted,

/s/ *Jenny Kramer*
Jenny Kramer
**ALSTON & BIRD**
90 Park Avenue
New York, NY  10016-1387
Telephone: (212) 210-9420
Facsimile: (212) 210-9444
jenny.kramer@alston.com

*Attorney for Defendants*

13

## CERTIFICATE OF SERVICE

I hereby certify that this 21st day of July, 2025, I served a copy of the foregoing document through the CM/ECF system upon all counsel of record.

/s/ *Jenny Kramer*
Jenny Kramer